[Civ. No. 13950. Fourth Dist., Div. Two. May 23, 1975.]

DONALD W. BRYANT et al., Plaintiffs and Respondents, v.
DAVID B. SWOAP, as Director, etc., Defendant and Appellant.

COUNSEL

Evelle J. Younger, Attorney General, Elizabeth Palmer, Assistant Attorney General, Edward M. Belasco and Patric Hooper, Deputy Attorneys General, for Defendant and Appellant.

William D. Schuetz for Plaintiffs and Respondents.

OPINION

KAUFMAN, J.—The Director of the California Department of Benefit Payments (hereafter "Department") appeals from a peremptory writ of mandate directing Department to pay Donald W. Bryant and Erma Bryant (hereafter "the Bryants") Aid to Families with Dependent Children (hereafter "AFDC") benefits.

The facts are not in dispute. The Bryants' daughter, Darlene, was born in October 1955. She was married in April 1971, at age 15. She separated from her husband and returned to her parents' home on January 26, 1972; she received a final decree of dissolution in August 1972. At all times pertinent to this appeal, she has remained home with her parents. Both of the Bryants are unemployed. The Bryants were receiving AFDC funds owing to Darlene's presence in their home. The Riverside County Department of Public Welfare terminated the Bryants' AFDC aid, effective December 31, 1972, after concluding Darlene was not eligible for benefits. The Bryants pursued administrative remedies, but Department ultimately sustained the county's action. The Bryants then brought this action for writ of mandate to set aside Department's decision. The trial court granted the writ and ordered Department to make payments commencing with that due on January 1, 1973.[1] Department appeals.

---

[1]The judgment states in pertinent part:

"IT IS ORDERED that:

"1. Respondent may not deny Aid to Families with Dependent Children (AFDC) payments to Petitioners solely because their minor daughter had been married and divorced;

"2. A peremptory writ of mandate shall issue from this Court, remanding the proceedings to Respondent and commanding Respondent to set aside its decision dated March 12, 1973, in the administrative proceedings entitled 'In the matter of the Hearing of Erma and Donald W. Bryant', and to grant to Petitioners all the AFDC payments to which they were rightfully entitled, commencing with payments starting January 1, 1973, and continuing with payments due until such time as Petitioners remained otherwise eligible for AFDC. [sic]"

Department determined Darlene was ineligible for AFDC benefits based solely on Eligibility and Assistance Standards Regulation 42-101.3,[2] which reads in pertinent part: "A child is eligible on the basis of age until his 18th birthday *only if he is unmarried.*" (Italics added.) In one sense, Darlene is "unmarried." That is, she is not presently married. Department, however, takes the position that "unmarried" means "never married." Conceding Darlene is otherwise AFDC eligible, Department denied her benefits on the sole ground that she had been married and divorced.

■ Recipient eligibility for AFDC funds is determined by criteria established by federal law. A state is not obligated to participate in an AFDC program, but if it does, it is required to conform to federal statutory and regulatory requirements. A state may not impose additional eligibility criteria to disqualify those who would otherwise be eligible for AFDC funds under federal standards. Such additional eligibility criteria violate the supremacy clause of the United States Constitution and are void. (See e.g., *Townsend* v. *Swank,* 404 U.S. 282, 286 [30 L.Ed.2d 448, 453, 92 S.Ct. 502]; *King* v. *Smith,* 392 U.S. 309 [20 L.Ed.2d 1118, 88 S.Ct. 2128]; *County of Alameda* v. *Carleson,* 5 Cal.3d 730, 738-739 [97 Cal.Rptr. 385, 488 P.2d 953], app. dism. 406 U.S. 913 [32 L.Ed.2d 112, 92 S.Ct. 1762].)

Department has not brought to our attention any federal requirement that the child be "unmarried." The Bryants assert in essence that since there is no explicit federal requirement that the child be "unmarried," then Department's eligibility requirement is automatically void. However, *Burns* v. *Alcala,* 420 U.S. 575 [43 L.Ed.2d 469, 95 S. Ct. 1180], invalidates this argument: "Several . . . courts . . . have read [prior Supreme Court cases] to establish a special rule of construction applicable to Social Security Act provisions governing AFDC eligibility. They have held that persons who are arguably included in the federal eligibility standard must be deemed eligible unless the Act or its legislative history clearly exhibits an intent to exclude them from coverage, in effect creating a presumption of coverage when the statute is ambiguous. . . . This departure from ordinary principles of statutory interpretation is not supported by the Court's prior decisions. [These prior cases] establish only that once the federal standard of eligibility is defined, a participating State may not deny aid to persons who come

---

[2]This regulation is one of many enacted by Department pursuant to section 11209 of the Welfare and Institutions Code, which commands Department to enact regulations for administration of AFDC programs.

within it in the absence of a clear indication that Congress meant the coverage to be optional. The method of analysis used to define the federal standard of eligibility is no different from that used in solving any other problem of statutory construction." (420 U.S. at p. 580 [43 L.Ed.2d at p. 475].)

42 United States Code section 606 prescribes which children are eligible for AFDC aid.[3] The portion of that section relevant herein is the requirement that the child be "deprived of parental support or care . . . ."

Department summarizes its argument as follows:

"(1) [A] dependent child, in the context of AFDC nomenclature, under both federal and state law, is one who has been deprived of parental support or care. (2) The parent referred to in the expression 'deprived of parental support or care' is the parent who has the legal obligation to support the child. (3) Once an individual is married, her parents no longer have the legal duty to support her. Thus a married daughter cannot be the basis in a household for an award of AFDC. (4) The legal duty to support does not return to the parents upon the dissolution of the marriage and subsequent removal of the previously married person to the parental household. (5) As a result, such an individual is not 'deprived of parental support or care.' (6) Consequently, a state regulation which treats a divorced minor the same as a married minor is not violative of federal or state law on its face or as applied."

Department derives its argument from the fact that the general duty of parental child support ceases upon the emancipation of the minor child. (*Codorniz* v. *Codorniz,* 34 Cal.2d 811, 817 [215 P.2d 32].) Marriage of a minor child results in emancipation. (Civ. Code, § 204, subd. 2.) Such emancipation is complete and does terminate a parent's general duty to support a child. (*Kamper* v. *Waldon,* 17 Cal.2d 718 [112 P.2d 1].)

---

[3]42 United States Code section 606 provides in pertinent part:

"When used in this part—

"(a) The term 'dependent child' means a needy child (1) who has been deprived of parental support or care . . . ."

Section 11250 of the Welfare and Institutions Code is similar: "Aid shall be granted . . to families with related children under the age of 18 years . . . in need thereof because they have been deprived of parental support or care due to: . . . (c) The unemployment of a parent or parents."

Federal law allows unemployment of a parent or parents as a basis for AFDC assistance. (42 U.S.C. § 607.) The federal law also imposes a number of other eligibility requirements not relevant to this appeal.

The threshold question is whether such state law has any impact on .AFDC eligibility, since the usual rule is that eligibility is determined solely according to federal standards. State law does have an effect, nevertheless, because there is no federal common law or domestic relations law. For example, *King* v. *Smith, supra,* 392 U.S. 309 [20 L.Ed.2d 1118, 88 S.Ct. 2128], considered whether a paramour was a "parent" for AFDC eligibility purposes.[4] The Supreme Court held that Congress meant the term "parent" to refer to individuals with a legal duty to support the child. Since the paramour had no such duty under Alabama law, he was not a "parent." Therefore, the court held Alabama could not deny aid based on the paramour's occasional presence in the home. Thus California law governing a parent's legal obligation to support his child, or the lack thereof, may affect the validity of the regulation here in question.

◼ Department's argument pivots on its assertion that AFDC aid is conditioned upon the parent's duty to support the child. Put succinctly, Department urges that a child may not be deprived of something it has no right to have. This argument has a certain logic and some consistency with the wording of 42 United States Code section 606. (See fn. 3, *ante.*) It is also consistent with language in *King* v. *Smith, supra,* and *Carleson* v. *Remillard,* 406 U.S. 598, 603 [32 L.Ed.2d 352, 356, 92 S.Ct. 1932].[5]

Yet giving Department's argument full effect, arguendo, we must consider whether parents of a married and divorced minor child might still have a legal duty of parental support. If such a duty exists, and the

[4]A child is eligible for AFDC assistance if, inter alia, it is". . . deprived of parental support or care by reason of the . . . continued absence from the home . . . of a parent . . . ." (42 U.S.C. § 606.) Mrs. Smith's paramour was deemed by Alabama to be a "substitute father" of her children. His periodic visits to the Smith home precluded AFDC aid under Alabama regulations, despite the "continued absence" of the natural father.

[5]*Carleson* v. *Remillard, supra,* considered California's regulation categorizing a father absent due to military service as not "continuously absent." (See fn. 4, *ante.*) The regulation was held in conflict with federal law and therefore invalid. Chief Justice Burger concurred separately to emphasize that California could consider the father's military pay in determining the extent of the child's need.

While AFDC eligibility is governed by federal law, need and benefit levels are governed by state law. (*King* v. *Smith, supra,* 392 U.S. at pp. 318-319 [20 L.Ed.2d at p. 1126, 88 S.Ct. 2128].) Of course, California could achieve the result intended by its "military father" regulation by setting *need* criteria which would exclude those families on military pay. This would affect all AFDC recipients. What California may not do is exclude military families, as a class, by manipulating *eligibility* criteria.

The impact of *Carleson* v. *Remillard, supra,* and *King* v. *Smith, supra,* on this appeal is uncertain. Both cases are concerned with the definition of a "continuously absent parent," rather than the definition of a "deprived child."

child meets all other criteria, she would be eligible for AFDC benefits under Department's reading of applicable federal law. The question would then become whether Department's regulation excludes that child. An affirmative answer to this latter question would render Department's "unmarried" criterion void.

Under California law the typical duty of parental support, as noted above, terminates with the marriage of the minor child. California, however, imposes an additional duty of parental support. Civil Code section 206, which defines certain reciprocal support duties of parents and children, imposes upon parents the duty to support their needy children unable to provide for themselves by work.[6] This duty, unlike the general duty of support, persists even if the child is emancipated or reaches the age of majority. (See *Codorniz* v. *Codorniz, supra,* 34 Cal.2d at p. 817.) This code section traces back to the Elizabethan poor law and has a legal heritage of almost 400 years. (*Swoap* v. *Superior Court,* 10 Cal.3d 490, 502-503 [111 Cal.Rptr. 136, 516 P.2d 840].) It has been part of California law since the original adoption of the Civil Code in 1872.

Department's regulation makes no distinction between married and divorced children within and without the purview of Civil Code section 206. Instead, Department construes "unmarried" to mean "never married." Therefore, the regulation excludes children who (1) are married and divorced, (2) have a right to parental support under Civil Code, section 206, and (3) are otherwise AFDC eligible.

Department attempts to sidestep Civil Code section 206 by focusing on the portion of that section limiting the parents' duty of support "to the extent of their ability." Department argues: (1) the duty of support is *conditioned* on an ability to pay; (2) application for AFDC assistance demonstrates a lack of ability to pay; and (3) therefore Civil Code section 206 is inapplicable herein. This argument is specious.

First, the phrase "to the extent of their ability" refers to the extent of the duty, not to its existence—what must be done to discharge the obligation, not whether the obligation arises in the first instance. Discussing the companion duty of children to support their needy

---

[6]Civil Code section 206 provides: "It is the duty of the father, the mother, and the children of any person in need who is unable to maintain himself by work, to maintain such person to the extent of their ability. The promise of an adult child to pay for necessaries previously furnished to such parent is binding. A person who is receiving aid to the aged shall be deemed to be a person in need who is unable to maintain himself by work."

parents, *Swoap v. Superior Court, supra,* held the section applies ". . . to all adult children of parents in need. [It draws] no distinction between such children and [does] not single out either wealthy children or poor children for special treatment, except to provide that parent[s] and children shall bear the duty of support 'to the extent of their ability.' (Civ. Code, § 206.)" (10 Cal.3d at p. 505.) If there is a needy child unable to support himself by work, then there is a parental duty of support, enforceable at equity. (*Radich v. Kruly,* 226 Cal.App.2d 683, 686 [38 Cal.Rptr. 340].) It is true there is little practical difference between having no duty of support and having no ability to support. However, as a legal proposition, it makes no sense to say the duty imposed by Civil Code section 206, appears and disappears with the waxing and waning of the parents' net worth. It is more reasonable to say this duty is triggered by the condition of the needy child, since that, after all, is the focus of the section in this context.

Second, a child is eligible for AFDC assistance if the child is needy. (42 U.S.C. § 606.) "Needy" is not equivalent to destitute or penniless. (See *County of Alameda v. Carleson, supra,* 5 Cal.3d at pp. 739-746.) Ability to support a needy child may coexist with eligibility for AFDC benefits. *Carleson v. Remillard, supra,* 406 U.S. 598 [32 L.Ed.2d 352, 92 S.Ct. 1932], held the child eligible for AFDC benefits, even though income was being received by the family unit. (See fn. 5, *ante.*) Thus parents may have some ability to support their needy child (Civ. Code, § 206), while the family remains entitled to AFDC assistance. Yet if the needy child had been married and divorced, Department's regulation would improperly exclude that family.

" 'It has been stated that the "main purpose of [Civ. Code, § 206] seems to be to protect the public from the burden of supporting people who have [parents] to support them." [Citations.]' " (*Swoap v. Superior Court, supra,* 10 Cal.3d at p. 503.) It may seem incongruous to conclude a right to AFDC assistance results from a parental duty which has the objective of protecting the public treasury.

However, implicitly Department asserts that the only purpose of AFDC programs is to help bear the legal duty of parental child support. If this be true, then the question before us is solely whether the legal duty exists. "It is . . . abundantly clear that a long tradition of law, not to mention a measureless history of societal customs, has singled out [parents] to bear the burden of supporting their [needy emancipated children]. This duty existed prior to, and independent of, any duties

arising out of the state assistance [programs]." (*Swoap* v. *Superior Court,* *supra,* 10 Cal.3d 490, 503-504.)

Further, Department urges AFDC assistance is conditioned on a state law duty of parental support, a view we here assume arguendo. But we bear in mind that AFDC eligibility is fundamentally a federal question. When the question is *whether* the state imposes a duty of support, *why* the state imposes that duty is not to be considered. Federal eligibility standards for AFDC benefits may not be frustrated by any inconsistency of purpose between federal law and Civil Code section 206.[7]

Parents of a married and divorced minor child also may incur child support duties without regard to Civil Code section 206. Although their general duty terminates with the child's marriage, parents may reassume that obligation by binding contractual agreement. (*Kamper* v. *Waldon,* *supra,* 17 Cal.2d 718.) Department's regulation fails to take this possibility into account and excludes all married and divorced children. Yet under Department's interpretation of federal standards, such an agreement would entitle an otherwise eligible married and divorced child to AFDC benefits.

The above analysis demonstrates the regulation herein fails under the very argument Department advances in its support. It excludes two distinct classes of married and divorced children who, Department implicitly admits, are eligible for AFDC benefits. A more deftly drafted regulation may well pass muster, but it is not our province to attempt the task. (See *Blair* v. *Pitchess,* 5 Cal.3d 258, 282 [96 Cal.Rptr. 42, 486 P.2d 1242, 45 A.L.R.3d 1206].)

We observe that the dispute before us revolves around two related points: the meaning of "unmarried" and the theoretical validity of Department's regulation. By insisting "unmarried" means "never married," Department retreats to an untenable position. "Unmarried" can mean "not presently married." (See, e.g., *Mott* v. *Scanlan,* 19 Cal.App. 250 [125 P. 762]; *Smith* v. *Grand High Court* (Tex.Civ.App.) 31 S.W.2d 192; *Phillips* v. *Ashworth,* 220 Ala. 237 [124 So. 519]; *Myers* v. *Denver & R.G.R.Co.,* 61 Colo. 302 [157 P. 196].) ■ Whenever possible, appellate courts must construe statutes and regulations to render them valid. (See, e.g., *San Francisco Unified School Dist.* v. *Johnson,* 3 Cal.3d 937,

---

[7]Civil Code section 206 has the secondary purpose of enforcing a moral obligation of support. (*Radich* v. *Kruly, supra,* 226 Cal.App.2d 683, 686-687.) This objective is, of course, completely consistent with the AFDC program.

948 [92 Cal.Rptr. 309, 479 P.2d 669], cert. den. 401 U.S. 1012 [28 L.Ed.2d 549, 91 S.Ct. 1266]; *People* v. *Tuttle,* 242 Cal.App.2d 883, 885 [52 Cal.Rptr. 204]; *D'Amico* v. *Brock,* 122 Cal.App.2d 63, 70-71 [264 P.2d 120].) ▇ If "unmarried" is construed to mean "not presently married," then Department's regulation will not exclude the two classes of married and divorced children eligible for AFDC assistance. We are therefore constrained to adopt this preferred construction of "unmarried."[8] Darlene is "not presently married" and is otherwise eligible for AFDC benefits. We hold Department improperly denied her aid to which she was rightfully entitled.

This result does not do violence to the basic purpose of the AFDC program. As *King* v. *Smith, supra,* 392 U.S. 309 [20 L.Ed.2d 1118, 88 S.Ct. 2128] describes, Congress in 1935 passed social security unemployment programs with an eye towards indirectly assisting destitute children of unemployed parents. The AFDC program, restricted in 1935 to families without a breadwinner, was designed to benefit those children who would not receive such indirect aid. (392 U.S. at pp. 327-330 [20 L.Ed.2d at pp. 1131-1132, 88 S.Ct. 2128].) Department's view that only "never married" children are to be included assumes ". . . Congress, at the same time that it intended to provide programs for the economic security and protection of *all* children [living at home[9]], also intended arbitrarily to leave one class of destitute children entirely without meaningful protection. . . . Such an interpretation of Congressional intent would be most unreasonable . . . ." (*King* v. *Smith, supra,* 392 U.S. at p. 330 [20 L.Ed.2d at pp. 1132-1133, 88 S.Ct. 2128]; see also *Carleson* v. *Remillard, supra,* 406 U.S. 598, 604 [32 L.Ed.2d 352, 357, 92 S.Ct. 1932].) (Original italics.) South Carolina, for example, recognizes common law marriage between males of 14 years and females of 12 years. (*State* v. *Ward,* 204 S.C. 210 [28 S.E.2d 785].) If the parents consent, such marriage apparently would result in emancipation under South Carolina law. (See *Parker* v. *Parker,* 230 S.C. 28 [94 S.E.2d 12, 60 A.L.R.2d 1280]; 67 C.J.S., Parent and Child, § 89, p. 816.) Thus a 12-year-old South

---

[8]Administrative interpretation is usually entitled to great weight. (*Bentley* v. *Swoap,* 43 Cal.App.3d 165, 168 [117 Cal.Rptr. 479].) However, it must here yield to an interpretation necessary to the regulation's validity.

[9]The Supreme Court now adopts the view that Congress intended only to provide for needy children living at home or with designated relatives. (See *Burns* v. *Alcala, supra,* 420 U.S. 575, at p. 582, fns. 8 and 9 and accompanying text [43 L.Ed.2d at p. 476].) We note *Alcala, supra,* and the statement of purpose in 42 United States Code section 601, emphasize that one purpose of the AFDC program is strengthening family life. Since Darlene must live at home or with relatives to be eligible for AFDC aid (42 U.S.C. § 606), granting her AFDC assistance would further this goal.

Carolinian female could easily find herself in the same position as Darlene. We find it difficult to believe Congress intended to exclude such a child from the AFDC program.

Further, Darlene's present position, as a practical matter, is not made substantially different because she was briefly married. Department in effect concedes she is needy. If she had never been married, there would be good reason to give her AFDC benefits. A parity of reasoning, then, and perhaps the equal protection clause (U.S. Const., 14th Amend.; *Hypolite* v. *Carleson*, 32 Cal.App.3d 979, 986-987 [108 Cal.Rptr. 751], cert. den. 415 U.S. 934 [39 L.Ed.2d 492, 94 S.Ct. 1449]) requires she receive such aid in her present situation.

We have construed Department's regulation so as to render it valid in the context before us. Respondent urges we declare the regulation void. This we expressly decline to do. Such a conclusion would require a holding that presently married children can be eligible for AFDC benefits. Since Darlene is divorced, this question is not before us. Furthermore, the answer to that question is not automatic. Congressional intent may be different in regard to extending benefits to married children as opposed to those not presently married. We express no opinion on the validity or invalidity of Department's regulation as applied to children who are still married.

In order to remove any ambiguity, judgment below is modified to read, in pertinent part:

"1. Respondent improperly denied Aid to Families with Dependent Children (AFDC) benefits to Petitioners; Petitioners are entitled to such benefits since their minor child is both not presently married and otherwise AFDC eligible;

"2. A peremptory writ of mandate shall issue from this Court, remanding the proceedings to Respondent and commanding Respondent to set aside its decision dated March 12, 1973, in the administrative proceedings entitled 'In the matter of the Hearing of Erma and Donald W. Bryant', and to grant to Petitioners all the AFDC payments to which they were rightfully entitled, commencing with payments starting

January 1, 1973, and continuing with payments due so long as Petitioners remain eligible for AFDC."

So modified, judgment is affirmed.

Gardner, P. J., and Tamura, J., concurred.